IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTOR HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND INC.,<br><br>Defendant. | C.A. No. 14-448-GMS |

## **MEMORANDUM**

### I. INTRODUCTION

The plaintiff Inventor Holdings, LLC ("Inventor Holdings") initiated patent infringement lawsuits against a number of defendants, including the above-captioned defendant Bed Bath & Beyond Inc. ("Bed Bath & Beyond"). Inventor Holdings alleges that Bed Bath & Beyond infringes U.S. Patent No. 5,862,582 ("the '582 patent").[1] Presently before the court is Bed Bath & Beyond's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.I. 40.) Bed Bath & Beyond argues that the '582 patent claims patent-ineligible subject matter and is invalid under 35 U.S.C. § 101. For the reasons discussed below, the court will grant Bed Bath & Beyond's motion for judgment on the pleadings.

### II. BACKGROUND

The '582 patent describes a method and system for processing payments for remotely purchased goods. Claims 8, 25, and 41 are representative:[2]

---

[1] A number of related actions were filed against various defendants that have since been dismissed. (*See* Civil Action Numbers 14-185-GMS and 14-730-GMS.) The instant motion was filed on behalf of a group of defendants of which Bed Bath & Beyond is the only remaining.

[2] Inventor Holdings has asserted claims 8, 12, 14, 16, 21, 25, 27, 28, 32, 33, 36, 38, 46, 50, 52, 54, 57, 59, 60, 63, 64, 65, and 68 against the now-dismissed defendants and Bed Bath & Beyond. It is unclear to the court which claims are not asserted against Bed Bath & Beyond but the court concludes this uncertainty is not material to its analysis. The court concludes that the claims are directed to the same abstract idea such that addressing each claim

8. A method for processing payment for a purchase of goods, comprising the steps of:
   (a) receiving at a point-of-sale system a code relating to a purchase of goods;
   (b) determining if said code relates to a local order or to a remote order from a remote seller;
   (c) if said code relates to a remote order, then
      (i) determining a price for said remote order;
      (ii) receiving a payment for said remote order; and
      (iii) transmitting to said remote seller data indicating that said payment has been received for said remote order.

25. A method for a remote seller to process a payment for the sale of goods, comprising the steps of:
   (a) receiving a remote order for a purchase of goods from a customer;
   (b) generating a code and a purchase price for said remote order;
   (c) transmitting said code and said purchase price to the customer; then
   (d) providing order data for use by a point-of-sale system of a local seller in receiving a payment for said remote order;
   (e) receiving payment data confirming said payment has been received at said point-of-sale system of said local seller;
   (f) initiating, responsive to said payment data, a shipment of said goods; and
   (g) receiving a payment for said remote order from said local seller.

41. A method for submitting a payment for a purchase of goods, comprising the steps of:
   (a) transmitting an order for goods to a remote merchant;
   (b) receiving a code and a purchase price for said order from said remote merchant;
   (c) providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order;
   (d) submitting said payment to said local seller at said point-of-sale system; and
   (e) receiving said goods from said remote seller.

('582 patent, claims 8, 25, 41.)

---

not necessary. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. Dec. 23, 2014).

Bed Bath & Beyond argues that the '582 patent is invalid because the claims at issue embody the abstract idea of paying for remote orders at local retailers. (D.I. 41 at 1.)

The court held a *Markman* hearing on May 11, 2015. For purposes of this Order the court adopts the Inventor Holdings' proposed constructions for all remaining claim terms.[3]

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter pleadings are closed—but early enough not to delay trial." When evaluating a motion for judgment on the pleadings, the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d 221. This is the same standard as a Rule 12(b)(6) motion to dismiss. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents

---

[3] Inventor Holdings argues that "[i]n order to invalidate a duly issued patent under § 101 before claim construction, [Bed Bath & Beyond] must prove their case with more than presumptions about the meaning of the patent." (D.I. 42 at 13.) The Federal Circuit has "never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed. Cir. 2011). "[B]ecause eligibility is a 'coarse' gauge of the suitability of broad subject matter categories for patent protection, *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010), claim construction may not always be necessary for a § 101 analysis." *Ultramercial*, 657 F.3d at 1325 (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (finding subject matter ineligible for patent protection without claim construction)). The court concludes that it may proceed on a § 101 analysis, as the parties' arguments are not focused on specific claim limitations, but instead on the broader concepts of the claims.

integral to pleadings may be considered in connection with Rule 12(c) motion).

Section 101 describes the general categories of patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. These broad classifications are limited, however, by exceptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2216 (2013)). Courts have eschewed bright line rules circumscribing the contours of these exceptions. *See id.* ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." (internal citation and quotations marks omitted)). The Supreme Court's decision in *Alice* reaffirmed the framework first outlined in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), used to "distinguish[] patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *See Alice*, 134 S. Ct. at 2355.

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, what else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

*Id.* (internal citations, quotations marks, and alterations omitted). Thus, the court must determine (1) if the patented technology touches upon ineligible subject matter, and (2) whether there are sufficient inventive elements such that the invention is "'significantly more' than a patent on an

4

ineligible concept." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2355); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, No. 2014-1506, 2015 WL 4068798, at *2 (Fed. Cir. July 6, 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 134 S. Ct. at 2354.

## IV. DISCUSSION

As a preliminary matter, Inventor Holdings asserts that because the court previously denied motions to dismiss in related cases which alleged the '582 patent fails § 101, Bed Bath & Beyond's motion provides no reason for the court to reverse its prior decisions. (D.I. 42 at 8.) Bed Bath & Beyond asserts that the prior rulings are inapposite because the rulings came before the Supreme Court issued its opinion in *Alice*. (D.I. 44 at 2.) Inventor Holdings' suggestion that the court be bound by its earlier rulings is untenable in light of *Alice* and other rulings on these issues. As such, the court will proceed with the § 101 analysis.

### 1. Abstract Idea

Bed Bath & Beyond asserts that the '582 patent is invalid because it fails to meet the subject matter eligibility requirements of 35 U.S.C. § 101. (D.I. 40 at 1.) Inventor Holdings argues that Bed Bath & Beyond characterization of the patent claims is unduly narrow and does not view the claims as a whole. (D.I. 42 at 10.)

There is no dispute that the "patent's claims address the problem of providing consumers a way to pay locally for remotely purchased goods." (D.I. 42 at 15.) The claims generally recite "receiving a point-of-sale system a code" and "determining if said code relates to a local order or to a remote order from a remote seller." The court applies the two-step framework outlined in *Alice* to the '582 patent. In doing so, the court finds that the '582 patent—and all of its seventy-

5

three claims—are invalid under § 101, as they claim the abstract idea of paying for remote orders at local retailers, without reciting meaningful limitations to render the idea patent eligible.

The court agrees with Bed Bath & Beyond that the core invention embodied by the '582 patent is a "fundamental economic [or] conventional business practice[]" and therefore an abstract idea. *See DDR Holdings*, 773 F.3d at 1256. The two business problems that the patent allegedly solves are (1) offering customers more payment options in connection with remote orders and (2) processing those payments without having to provide credit card information over the Internet, phone, or mail. These two problems relate to conventional business practices, as retailers have long sought to provide their customers with convenient, flexible payment options and to protect their customers' financial information.

Inventor Holdings attempts to rely on the specification to avoid invalidity claiming "[a][ human, unassisted by the invention of the '582 patent, cannot store codes in a database and electronically apply those codes to remote or local orders entered in a [point-of-sale] system." (D.I. 42 at 10 n.5.) None of the '582 patent's claims are restricted to any specific, inventive ways of storing codes in databases or electronically applying them. The term "database" does not even appear in the claims. As seen in Inventor Holding's proposed constructions, there is no assertion that the claims are somehow restricted to this narrow interpretation. The specification is not the text sought to be patent-eligible. *See Alice*, 134 S.Ct. at 2355 & n.3.

Inventor Holdings asserts that the '582 patent's claims "address a business challenge particular to remote sales, especially via the Internet, and provide protection for credit card account numbers." (D.I. 42 at 13.) Following the guidance of *Alice* and its progeny, the court finds that the concept of local processing of payments for remotely purchased goods is an abstract idea. *See* '582 col. 1 ll. 6–10. The specification provides support for the notion that this concept qualifies

6

as "longstanding commercial practice" and a "method of organizing human activity." *See Alice*, 134 S. Ct. at 2356–57 (emphasis added). While described as a novel alternative to traditional consumer options the '582 patent describes nothing more than a retailer allowing a customer requesting goods remotely—such as via the internet or by phone—to defer payment to an in-person location. The concept builds upon the practice of "layaway" goods that require a deposit to secure an item for later purchase. Here, the customer may hypothetically avoid any sort of deposit and rest easy knowing they can pay locally, presumably in cash, in order to keep their credit card information safe. The court is well aware of the concerns over financial security plaguing consumers in light of recent privacy breaches at traditional retail outlets. Those concerns alone, however, do not alter the court's conclusion that the '582 patent is directed to an abstract idea.

2. **Inventive Concept**

Not all patents directed to abstract ideas are patent ineligible under § 101. Therefore, although the '582 patent recites the abstract concept of paying for remote orders at local retailers, it will not be found invalid if there is evidence of an inventive concept or contribution: "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355. Drawing a line between patent-eligible and patent-ineligible manifestations of abstract ideas is often difficult. *See DDR Holdings*, 773 F.3d at 1255. The recitation of "well-understood, routine, conventional activities," previously known to the industry, however, is insufficient to "transform the claimed abstract idea into a patent-eligible application. *OIP Techs.*, 788 F.3d at 1363 (internal quotation marks and alterations omitted) (quoting *Alice*, 134 S. Ct. at 2359).

The court agrees with Bed Bath & Beyond that each of the claims of the '582 patent lack meaningful limitations on the abstract idea. Claim 8 is a "method for processing payment for a

purchase of goods," including the steps of (a) receiving a code relating to a purchase of goods; (b) determining if the code relates to a local or remote order; and (c) if the code is for a remote order, then determining the price, receiving payment, and alerting the remote seller that payment has been received. Claim 25 elaborates on the final step of Claim 8 and provides "a method for a remote seller to process a payment for the sale of goods, . . ." Claim 25 utilizes a point-of-sale ("POS") system to transmit the appropriate codes between remote and local sellers. Claim 41 provides for "a method of submitting a payment for a purchase of goods" and again simply outlines the natural and expected steps ordinarily carried out by merchants. The claims simply tell a practitioner that a remote merchant can direct a customer to pay for goods at a third-party, local merchant that has agreed to accept payments for the remotely-ordered goods and to tell the remote merchant when the customer has paid for the goods so that the remote merchant can then ship the goods—nothing more.

Inventor Holdings asserts that the '582 patent's subject matter covers an inventive concept because the claims solve a problem through the use of computer technology. (D.I. 42 at 15.) The patent only makes generic references to computers that are not sufficient to render the claims patentable. These limitations are not sufficient to make an abstract idea patentable. The Federal Circuit explained that "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Dealertrack*, 674 F.3d at 1333. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

8

Inventor Holdings argues, in a conclusory manner, that "express" and "concrete" limitations exist such that the patent is not directed to an abstract idea. These assertions are insufficient and provide little more than "an amorphous definition." *See Money Suite*, 2005 WL 436160 at *4 (stating the patentee's description of the claims-at-issue as a "concrete, technical solution" was an "amorphous definition . . . of little help").

Inventor Holdings also argues that the claims satisfy the machine-or-transformation test. (D.I. 42 at 15.) Inventor Holdings asserts that "the computer is at the very heart of the claimed inventions" without which "the objectives and advantages that the patent states for the invention would not be achieved." (*Id.* at 16.) Specifically, the '582 patent claims the use of a POS to transmit transaction-related information and to process payments. '582 patent, col. 8 ll. 28–42. Inventor Holdings relies on pre-*Alice*, inapplicable case law. (D.I. 42 at 6.) Inventor Holdings' citations to pre-*Alice* case law do not change the court's conclusion.

## V. CONCLUSION

The court concludes that the asserted claims of the '582 patent are not eligible for patent protection under 35 U.S.C. § 101. The court will grant Bed Bath & Beyond's motion for judgment on the pleadings. (D.I. 40.)

Dated: August 21, 2015

_____
UNITED STATES DISTRICT COURT

9