IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INVENTOR HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:14-cv-448-GMS |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| BED BATH & BEYOND INC., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF INVENTOR HOLDINGS, LLC.'S OPPOSITION TO DEFENDANT BED BATH & BEYOND'S MOTION FOR ATTORNEYS' AND EXPERTS' FEES

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis #4606
Richard C. Weinblatt #5080
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Plaintiff*
*Inventor Holdings, LLC*

## TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF PROCEEDINGS .......................................................1

II.    SUMMARY OF THE ARGUMENT.................................................................1

III.   STATEMENT OF FACTS ............................................................................3

IV.    LEGAL STANDARD....................................................................................5

V.     ARGUMENT ..............................................................................................6

       A.     This Case Is Not "Exceptional" Under § 285 ........................................6

              1.     IH's Assertion Of The Validity Of The '582 Patent Was Reasonable And
                     Made In Good Faith.........................................................................7

              2.     IH's Infringement Claims, Though Never Considered By The Court, Were
                     Reasonable And Made In Good Faith ............................................10

       B.     BBB's Motion Does Not Warrant An Award Of Fees Under the
              Court's Inherent Authority .................................................................14

       C.     If the Court is Not Inclined to Dismiss BBB's Motion Outright,
              It Should Postpone Deciding the Motion Until The Conclusion
              of IH's Appeal ...................................................................................15

       D.     BBB'S Requested Fees Are Unreasonable............................................15

VI.    CONCLUSION...........................................................................................17

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 ......................................................3, 7, 8, 10

*Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975) ...................................6, 14

*Bates v. Board of Education of the Capital School District*, C.A. No. 97-394, 2000 WL 1292677 (D. Del. Aug. 29, 2000)...................................................................................................................16

*Bilski v. Kappos*, 561 U.S. 593 (2010) .........................................................................................8

*California Inst. of Tech. v. Hughes Communications Inc.*, 59 F. Supp. 3d 974 (C.D. Cal. Nov. 3, 2014)..................................................................................................................................10

*Classen Immunotherapies, Inc. v. Biogen,* 2014 WL 2069653 (D. Md. May 14, 2014) ....................6

*Cognex Corp. v. Microscan Systems, Inc.*, No. 13-cv-2027 (JSR), 2014 WL 2989975 (S.D.N.Y. June 30, 2014) ..........................................................................................................................6

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB, 2015 WL 1284826 (E.D. Tex. Mar. 20, 2015)..................................................................................8

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369 (Fed. Cir. 2015)...........14

*Howlink Global LLC v. Centris Info. Services, LLC*, 4:11-cv-71, 2015 WL 216773 (E.D. Tex. Jan. 8, 2015).............................................................................................................................6, 14

*Hutto v. Finney,* 437 U.S. 678 (1978) ....................................................................................6, 14

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011) ...........................................................15

*MarcTec, LLC v. Johnson & Johnson* ..........................................................................................14

*Mayo Collaborative Svs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) .......................3, 8, 9, 10

*McRO, Inc. v. Sega of America, Inc.,* No. 2:12-cv-10327, 2014 WL 4749601 (C.D. Cal. Sept. 22, 2014)..................................................................................................................................10

*Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014).........................................5, 6, 14

*Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137 (9th Cir. 1951).......................................................6

*Pure Fishing, Inc. v. Normark Corp.*, No. 3:10-cv-02140-CMC, 2014 WL223096 (D.S.C. Jan. 21, 2014)...................................................................................................................................6

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) ........................... 12

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 2011 WL 810003 (D. Del. Mar. 3, 2011) ............................................................................................................................. 15

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ..................................... 5, 7, 10

*Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381 (Fed. Cir. 2008) ................................................ 6

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013) ........................................ 9

*Trover Group, Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047 2015 WL 4910875 (E.D. Tex. Aug. 17, 2015) ................................................................................................................... 12, 13

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946) ...................................... 6, 14

*Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23 ............. 3, 10

*Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13 ...... 3, 10

**Statutes**

35 U.S.C. § 101 ....................................................................................................................... 7, 8, 9, 10

35 U.S.C. § 282 ................................................................................................................................. 7, 9

35 U.S.C. § 285 ......................................................................................................................... 6, 10, 14

**Rules**

FED. R. CIV. P. 54 ............................................................................................................................... 15

## I.      NATURE AND STAGE OF PROCEEDINGS

On April 8, 2014, Plaintiff Inventor Holdings, LLC ("IH") filed a Complaint for infringement of U.S. Patent No. 6,381,582 (the "'582 patent"), against Defendant Bed Bath & Beyond, Inc. ("BBB").  (D.I. 1.)  BBB filed its Answer on May 30, 2014 (D.I. 9), and more than eight months later BBB filed a Motion for judgment on the pleadings on February 6, 2015. (D.I. 40.)  The Court held a *Markman* hearing on May 11, 2015. (D.I. 40.)  The Court granted BBB's Motion on August 21, 2015. (D.I. 84.)  IH filed a Notice of Appeal on September 3, 2015 (D.I. 87), and BBB filed a motion for attorneys' and experts' fees on September 4, 2015 (the "Motion").  (D.I. 88.)  IH submits this opposition in response to BBB's Motion.

## II.     SUMMARY OF THE ARGUMENT

1.      This is not an "exceptional" case warranting the award of attorneys' fees under 35 U.S.C. § 285.  Patents are presumed valid and no Supreme Court case, not even *Alice*, altered that presumption.  The record demonstrates IH presented objectively reasonable, substantive evidence of the validity of the '582 patent and BBB's infringement.

2.      BBB's argument that IH should have known that the claims of the '582 patent were not patent-eligible is based on a misapprehension of the holding in *Alice* and a mischaracterization of the record in this case, as well as unsupported attorney argument.  It is clear from Federal Circuit and Supreme Court precedent that not all software-based patents are ineligible.  To agree with BBB's position would render all software-based patents invalid, even before they are adjudicated – a conclusion that is not tenable and is inconsistent with all legal authority.   Additionally, if BBB was so sure that the '582 patent was not patent-eligible after *Alice,* why did BBB itself wait more than seven months after *Alice* to file its Motion on the Pleadings?  The only plausible conclusion is that BBB had its doubts.  If BBB had filed its motion in a timely manner, this case may well have been decided pre-*Markman*.  Thus, it was

BBB's own egregious conduct that it not tries to recover from.

3.     BBB's argument that IH had no meritorious claim of infringement by BBB is predicated on the adoption of its construction of "remote seller," a legitimately disputed claim construction; as the Court is aware, no *Markman* order issued before or concurrently with the Court's granting of BBB's motion.   Additionally, BBB ignores the development of the evidentiary record and its dilatory tactics in allowing IH to review the source code, ███████ ████████████████████████████████████████████████████████████████ and the alternative doctrine of equivalents arguments proffered by IH and its technical expert – based on the source code review – that addressed BBB's proposed claim construction of "remote seller" that included the presence of a "third party."   Indeed, ████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████ Thus, BBB left IH to confirm its infringement position through the code itself.   The only counter argument to IH's source code positions presented by BBB throughout this litigation, until the service of BBB's rebuttal expert report on August 17, 2015 was indisputably attorney argument.

4.     BBB has made no showing of any of the relevant factors that would entitle it to an award of fees pursuant to the Court's inherent authority, which presents a higher bar than § 285.

5.     The Court should deny BBB's Motion in its entirety, or, in the alternative should defer any decision on the Motion until the conclusion of IH's appeal.

6.     If the Court determines fees should be awarded (which it should not), BBB did not submit admissible evidence or evidence that is likely to be admissible, and there is no factual basis upon which to award fees.   Accordingly, BBB's Motion should be denied.

### III.    STATEMENT OF FACTS

The application corresponding to the '582 patent was filed on September 29, 1997 and the patent issued April 30, 2002.  (D.I. 1-1.)

In related litigation of the '582 patent, this Court denied motions to dismiss based on § 101 challenges relying on the Supreme Court's two-part test in *Mayo Collaborative Svs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012).  *See Walker Digital, LLC v. Wal-Mart Stores, Inc.*, C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13; *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23.   In *Alice*, the Supreme Court reiterated that the *Mayo* test was the correct analytical framework for abstract idea challenges to patentability under § 101.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2355 (2014).

On June 24, 2014, IH served Requests for Production of Documents and Things that included requests for source code.  (*See* Exh. A at Request for Production Nos. 20, 24;[1] D.I. 16). Yet, BBB failed to produce source code until November 2014.  Nevertheless, on October 1, 2014, IH supplied to BBB its First Supplemental Preliminary Infringement Contentions ███ ███ in response to BBB's letter of September 25, 2014.  ███████████████████ ████████████████████████████████████ BBB provided IH no response that its supplementation was deficient.  Thereafter, IH contacted BBB to provide its source code.  ████████  BBB finally provided source code for IH's expert's review in March 2015, approximately nine months after IH first requested it.  ██████

IH then informed BBB that certain files were missing and a second review was necessary.  ████████  When IH's expert returned to review the source code at BBB's facilities

---

[1]  Unless otherwise noted, exhibits cited in this brief are attached to the co-filed Declaration of Richard C. Weinblatt in Support of Plaintiff Inventor Holdings, LLC's Opposition to Defendant Bed Bath & Beyond's Motion for Attorneys' and Experts' Fees.

in New Jersey April 14, 2015, BBB ██████████████████████████████████

delayed the review by IH's expert. ████████████ IH's expert was forced to ensure the same

source code was provided and delay his review by days.

Subsequently on May 6, 2015, IH took the deposition of Ms. Lynda Pak – BBB's Rule

30(b)(6) witness ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ leaving IH to confirm the operation of the

accused products through its experts.

While IH was finalizing supplemental preliminary infringement contentions on May 28,

2015, BBB sent IH a letter. ██████████████████████████ IH's May 28, 2015

supplementation included 124 pages of analysis, including significant citation to and analysis of

the source code.[2] ██████████████████████████████████████████████████

████████████████████████████████ ██████████ Counsel for the parties then

participated in a discussion on May 30, 2015 ████████ and the parties continued to disagree.

On June 26, 2015, IH requested further access to the source code computer, and BBB

responded that the computer would be made available on July 6, 2015. ████████████ Again, the

computer had been dismantled and both of IH's experts were prevented from accessing the

computer at the scheduled time. ██████████████

On July 17, 2015, IH's expert served his opening report that articulated in detail his basis

for infringement, including agreeing with IH's previously served contentions and providing

---

[2] On January 23, 2015, IH decided to no longer assert claims 70-73 to ensure the parties had
adequate space to brief the claim constructions in dispute for *Markman*. (*See* Exh. I.)  IH
served replacement supplemental preliminary infringement contentions on May 28, 2015 that
removed claims 70 and 72, reducing the analysis to 124 pages. ██████████████

further analysis ▮▮▮▮▮▮▮▮▮▮▮, and he served his supplemental opening report including on July 31, 2015 that included references from the source code review that occurred in July (▮▮ ▮▮▮▮▮ D.I. 81).   Included in his report were alternative theories of infringement under the doctrine of equivalents in the event that BBB's construction of "remote seller" requiring a "third party" were adopted by the Court. ▮▮▮▮▮▮▮▮▮▮

On August 17, 2015, IH's expert served his opinions as to why the '582 patent was patentable, including under Section § 101. ▮▮▮▮▮▮▮▮

## IV.   LEGAL STANDARD

The award of attorney's fees is governed by 35 U.S.C. § 285.  The Supreme Court, in *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749 (2014), rejected the Federal Circuit's "objectively baseless" and "subjective bad faith" formulation as "overly rigid" and laid out a more flexible framework..  *See id.* at 1756.   The Supreme Court thus attributed to the word "exceptional" its ordinary meaning: "uncommon," "rare," "not ordinary," "unusual," or "special." *Octane Fitness*, 134 S. Ct. at 1756. The Court defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*  District Court judges are free to exercise their discretion on a case-by-case basis, considering the totality of the circumstances, when determining whether attorney's fees are appropriate.  *Id.*

"[I]t is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position."  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)  (quoting *Octane*) (emphasis in original).

If a prevailing party establishes by a preponderance of the evidence that the case is

exceptional under § 285, the district court determines, in its discretion, whether and to what extent to award attorney fees and expenses. The amount of fees to be awarded, if any, depends on the extent to which the case is found to be exceptional.[3]

> A court also may assess attorney fees under its inherent authority:
>
> when a party acted in bad faith, vexatiously, wantonly, for oppressive reasons, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), when a party commits fraud on the court, *Universal Oil Products Co. v. Root Refining Co.*, [328 U.S. 575, 580] (1946), or when a party delays or disrupts litigation or interferes with a court order's enforcement, *Hutto v. Finney,* 437 U.S. 678, 689 (1978). ***Meeting the bar for attorneys' fees under a court's inherent powers is 'more stringent' than the bar under Section 285.***

*Howlink Global LLC v. Centris Info. Services, LLC*, 4:11-cv-71, 2015 WL 216773, at *6 (E.D. Tex. Jan. 8, 2015) (emphasis added).

## V.    ARGUMENT

### A.    This Case Is Not "Exceptional" Under § 285

BBB is not entitled to an award of fees under § 285 because it cannot demonstrate that IH's actions in this case were somehow frivolous, objectively baseless, and well out of the ordinary.  *See Octane*, 134 S. Ct. at 1753 (noting that fees do not constitute 'a penalty for failure to win a patent infringement suit,' and are appropriate 'only in extraordinary circumstances.') (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951); *see also SFA*, 783

---

[3] *See, e.g.*, *Cognex Corp. v. Microscan Systems, Inc.*, No. 13-cv-2027 (JSR), 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (awarding only "attorneys' fees for contesting any motions brought by defendants that have sought to reargue what was already decided by the Court"); *Classen Immunotherapies, Inc. v. Biogen,* 2014 WL 2069653, at *6 (D. Md. May 14, 2014) ("Classen knew from January 26, 2005 that its claims were objectively baseless . . . Accordingly, Biogen is entitled to an award of reasonable attorneys' fees and expenses incurred after that date."); *Pure Fishing, Inc. v. Normark Corp.*, No. 3:10-cv-02140-CMC, 2014 WL223096, at *20 (D.S.C. Jan. 21, 2014) (slip op.) ("Because the court has found Pure Fishing's pursuit of the Kelley Claim subjectively baseless only for a limited period of time, it limits its award of attorney fees for defense of the merits to the same period"); *Takeda Chem. Indus. v. Mylan Labs.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) (noting that fees for an entire suit are rarely awarded).

F.3d at 1348 (Fed. Cir. 2015) (the "correctness or eventual success" of a party's litigation position is not determinative of the attorney fee issue; "[a] party's position on issues of law ultimately need not be correct for them not to 'stand[] out,' or be found reasonable." (alteration in original).)

### 1. IH's Assertion Of The Validity Of The '582 Patent Was Reasonable And Made In Good Faith

BBB relies upon a gross misreading of the holding in *Alice* and a mischaracterization of the record in this case, as well as unsupported attorney argument to proffer that IH's patent infringement claims were objectively unreasonable. Arguing in contravention of 35 U.S.C. § 282(a)'s presumption of the validity of a duly issued patent, BBB's starting proposition is that

████████████████████████████████████████████████████████

███████████████████████████████████████████ Yet, in the very next paragraph, BBB argues directly against its position. Noting that the '582 patent previously survived pre-*Alice* § 101 challenges in this Court, BBB admits that ████████████████

████████████████████████████████████████████████████████

█████████████

BBB's flawed arguments arise from its misreading of the holding in *Alice* and the incorrect belief that business ideas are *per se* patent ineligible. ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Notably, BBB cites no case law advancing such a *per se* rule, and the holding in *Alice* makes no such pronouncement. Rather, *Alice* confirmed that the two-prong

---

[4] Despite now arguing that the '582 patent was clearly invalid at the time this action was filed April 8, 2014, BBB did not file its § 101 challenge until February 6, 2015. By its own reasoning, BBB would have saved itself considerable expense if it had not delayed its motion.

test for patent eligibility articulated in *Mayo Collaborative Svs. v. Prometheus Labs., Inc.* is generally applicable to § 101 analysis. *Alice*, 134 S. Ct. at 2355 (2014). Nothing in the *Alice* opinion required IH to drop its infringement claims against BBB.

> "While a sea change in patent law could occur that might require patent holders to reevaluate the validity of their portfolios, none of the cases on which Red Robin relies—*Bilski v. Kappos*, 561 U.S. 593 (2010), *Mayo*, or *Alice*—can be characterized as such a tide-reversing case. Absent a case presenting such a clear inflection point, the presumption of validity creates a high bar against arguing that assertion of a properly issued patent merits an award of fees that Red Robin's arguments simply cannot overcome."

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB, 2015 WL 1284826, at *2 (E.D. Tex. Mar. 20, 2015).

Further, in its Statement of Facts, BBB presents speculative argument based on a mischaracterization of the record. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

5 The *Bilski* case was not decided by the Supreme Court until June, 2010. The cited document clearly references *In re Bilski*, decided by the Federal Circuit October 30, 2008. ████████
█



Finally, BBB cites a small portion of the deposition testimony of the '582 patent's first named inventor to suggest ████████████████████████████████████████

Regardless, IH's assertion of the validity of the '582 patent had substantive strength. First, all duly issued patents are presumed to be valid.  28 U.S.C. § 282(a).  "There exists a 'presumption that the assertion of infringement of a duly granted patent is made in good faith.'" *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326-27 (Fed. Cir. 2013).  That presumption is strengthened with respect to the '582 patent since it had already survived § 101 challenges under the two-part test of *Mayo* (*see Walker Digital, LLC v. Wal-Mart Stores, Inc.*,

---

[6] Nevertheless, BBB claims categorically that ████████████████████████████ Nothing in the record supports this assertion.

C.A. No. 1:13-cv-96-GMS (D. Del.), D.I. 13; *Walker Digital, LLC v. PayNearMe Inc.*, C.A. No. 1:13-cv-98-GMS (D. Del.), D.I. 23), and the two-part *Mayo* test was further endorsed by the Supreme Court in *Alice*. *Alice*, 134 S. Ct. at 2355 (2014). Additionally, IH has incurred considerable expense advancing the merits of its validity and infringement positions, and it has presented substantial evidence, including its expert's opinions, regarding the § 101 patentability of the '582 patent.[7] (███████████ D.I. 42.) The mere fact that its validity arguments did not prevail does not make this an exceptional case under § 285. "[I]t is the 'substantive *strength* of the party's litigating position' that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position." *SFA*, 793 F.3d 1344 at 1348 (quoting *Octane*) (emphasis in original).

Any review of the case law following *Alice* reveals the difficulty and uncertainty of a § 101 analysis. *See, e.g., California Inst. of Tech. v. Hughes Communications Inc.*, 59 F. Supp. 3d 974, 986 (C.D. Cal. Nov. 3, 2014) ("In order to best incentivize innovation, however, patent law must be predictable, consistent, and uniform. *Alice* does not achieve this goal, leaving the boundaries of § 101 undefined.") (internal citation omitted); *McRO, Inc. v. Sega of America, Inc.*, No. 2:12-cv-10327, 2014 WL 4749601, at *5 (C.D. Cal. Sept. 22, 2014) ("[T]he two-step test may be more like a one step test evocative of Justice Stewart's most famous phrase ['I know it when I see it'].").  The fact that the '582 patent's presumptively valid claims were invalidated in an evolving area of the law is not exceptional.

### 2. IH's Infringement Claims, Though Never Considered By The Court, Were Reasonable And Made In Good Faith

Despite the fact that the Court made no determination on the merits of IH's infringement

---

[7] IH's evidence was not before the Court due to the nature of Rule 12(c) and the Court based its decision on attorney argument, not evidence.

arguments, BBB argues that IH's *original* infringement contentions were objectively unreasonable. ███████████ BBB's argument fails for two reasons. First, it is conditioned on the acceptance of its proposed construction for one of seven disputed claim terms (D.I. 39; D.I. 74[8]), which were not construed by the Court prior to the grant of BBB's motion for judgment on the pleadings. Second, it ignores the development of the record and IH's infringement case under the doctrine of equivalents, which includes IH's expert's opinions and the supplemental infringement contentions provided as IH was able to obtain substantive documents and testimony.

BBB relies upon its construction of one disputed claim term, "remote seller," to assert that its accused instrumentality could not plausibly infringe the '582 patent.[9] ███████████ BBB's construction requires that the "remote seller" be "a third-party merchant separate from the local seller." ███ ███ IH has consistently maintained that "remote seller" refers only to geographic location, and the "local seller" and "remote seller" can be the same entity. (*See* D.I. 45 at 10; D.I. 47 at 8-12; Exh. R at 18:9-20:7) BBB's discussion of its correspondence to IH regarding ███████████████

███████████

BBB further relies on the Court's Order granting its motion for judgment on the pleadings

---

[8] The phrase "means connected to said processor for receiving said purchase data through a computer data network" in claim 68 was not a part of this case. It was a term to be construed in a previously co-pending case, *Inventor Holdings, LLC v. Kmart Corporation et al.*, C.A. No. 1:14-cv-185-GMS.

[9] ███████████████████████████████████████████████

to argue that its noninfringement theory was correct and ████████████████████████

████ ████ BBB effectively argues that despite the Court's statement in that order that it

*expressly* "adopts the Inventor Holdings' proposed constructions for all remaining claim terms"

for the purposes of the decision, it *implicitly* adopted BBB's proposed construction requiring a

third party. (*Compare* D.I. 84 at 3 *with id.* at 8 ("The claims simply tell a practitioner that a

remote merchant can direct a customer to pay for goods at a third-party, local merchant . . . .)) [10]

Similar to the discussion of patentability above, even if BBB's claim construction

argument were found to be correct, the adoption of one competing claim construction over

another does not entitle the prevailing party to a § 285 award of fees. *See e.g., Trover Group,*

*Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047 2015 WL 4910875, at *4 (E.D. Tex. Aug. 17,

2015) (slip op) ("Such push-and-pull over the scope of claim language is common in patent

litigation. The fact that plaintiffs lost that battle in this case does not by itself render their

conduct sanctionable."); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368

(Fed. Cir. 2012) ("Reasonable minds can differ as to claim construction positions and losing

constructions can nevertheless be nonfrivolous.").

BBB's noninfringement argument also entirely ignores IH's substantive infringement case

under the doctrine of equivalents, an issue of fact that has not been determined in this case. As

detailed in IH's expert's ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ BBB,

---

[10] BBB quotes this portion of the Court's order, but goes on to state that the Court ██████████

Given the well-documented dispute over the construction of "remote seller" and that "third

party" does not appear in the asserted claims, BBB must have known, or should have known,

that its statement is inaccurate.

therefore, has no legitimate basis for requesting fees based on its construction of this single, disputed term.

Additionally, BBB's infringement argument ignores the development of the record and its dilatory tactics in allowing IH to review the source ████████████████████████████ ███████████████████████████████████████████████ It was not until March 2015 that BBB made the code available for review by IH's expert. ██████████ Following this review, █████████████████████████████████████ ██████████████████████████ At the second attempted review the following month, BBB deleted the source code from the computer initially supplied at the first review, then provided portions of the code piecemeal with much delay and on two separate computers. ███ ██████ Similar issues arose at IH's third attempted review in July 2015 when BBB again deleted source code from the computer supplied at the previous review. ████████

Following these difficult reviews, IH provided supplemental infringement contentions documenting its substantive infringement arguments, both literal and under the doctrine of equivalents, which included substantial analysis of the BBB source code. ██████████ Additionally, IH provided its expert's report regarding infringement, which confirmed IH's allegations of infringement and added additional support for infringement – both literal and under the doctrine of equivalents – based on the source code and BBB's document production. ████████████████ BBB ignores these developments and would have the Court assess fees based on the preliminary, incomplete record, before it had provided the required access to ███████████████████████████. *See Trover*, 2015 WL 4910875 at *3 ("[T]he non-moving party's conduct must be analyzed in light of the stage of development of the record in the case.  Thus, the non-moving party cannot fairly be charged at

13

the outset of the case with knowledge of information that is developed in the course of the litigation.")  Further, the Court should consider BBB's litigation conduct in weighing the totality of the circumstances.  *See Gaymar Indus., Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[T]he conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry, including the conduct of the movant.")

BBB's reliance on its construction of a single, disputed claim term, its willful disregard of the development of the record, and its dilatory tactics in disclosing the most relevant evidence cannot transform IH's substantive infringement claims into an "exceptional" case deserving of sanction under § 285.

**B.    BBB's Motion Does Not Warrant An Award Of Fees Under the Court's Inherent Authority**

BBB also asks the Court to assess fees under its inherent authority, but BBB makes no showing that such an exercise of judicial authority is warranted in this case, and the single case it cites in which a court awarded such fees is inapposite. ▮

> Courts may take into account a number of factors, including: when a party acted in bad faith, vexatiously, wantonly, for oppressive reasons, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), when a party commits fraud on the court, *Universal Oil Products Co. v. Root Refining Co.*, [328 U.S. 575, 580] (1946), or when a party delays or disrupts litigation or interferes with a court order's enforcement, *Hutto v. Finney,* 437 U.S. 678, 689 (1978).  ***Meeting the bar for attorneys' fees under a court's inherent powers is 'more stringent' than the bar under Section 285.***

*Howlink Global*, 2015 WL 216773, at *6 (emphasis added).

BBB has made no evidentiary showing that IH's conduct in this case implicates any of these factors.  In *MarcTec, LLC v. Johnson & Johnson*, the Federal Circuit upheld an award of experts' fees under the district court's inherent authority where the patentee had engaged in serious improper conduct:

> MarcTec engaged in litigation misconduct when it:

14

(1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and expenses attendant thereto.

664 F. 3d 907, 919-20 (Fed. Cir. 2012).

In the present case, BBB has not alleged – nor can it allege – any similar conduct on the part of IH that would warrant the Court's exercise of its inherent authority.[11]

### C.    If The Court Is Not Inclined To Dismiss BBB's Motion Outright, It Should Postpone Deciding The Motion Until The Conclusion Of IH's Appeal

Under Rule 54, the Court may defer any ruling on a claim for fees pending the outcome of an appeal on the merits.  *See* FED. R. CIV. P. 54, adv. Comm. Note to 1993 amendments ("If an appeal on the merits of the case is taken, the Court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.");  *accord Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 2011 WL 810003, at *1 (D. Del. Mar. 3, 2011).   IH filed its Notice of Appeal on September 3, 2015 (D.I. 87), before BBB filed its Motion, and the appeal has been docketed by the Federal Circuit as case no. 15-1988.

### D.    BBB'S Requested Fees Are Unreasonable

If this Court determines that fees should be awarded – which it should not – the Court then evaluates whether to grant the fees requested.  The Court considers the following factors when deciding whether a fee application is reasonable:  (1) whether the documentation submitted adequately supports the hours claimed by the attorneys; (2) whether the hours claimed were reasonably expended; (3) whether the attorneys' hourly rates are reasonable; (4) whether

---

[11] BBB cites to *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011) ▆▆▆▆▆▆▆, a case that confirms BBB's Motion should be denied.  In that case, the Federal Circuit found the patent owner's proposed construction of a claim was not objectively baseless and reversed the district court's award of fees.  *Id.* at 1374.

reductions are appropriate; and (5) whether the applicant's request for other costs is reasonable. *Bates v. Board of Education of the Capital School District*, C.A. No. 97-394, 2000 WL 1292677, at *2 (D. Del. Aug. 29, 2000). BBB's motion fails on all five factors. First, BBB's submitted documentation (factor 1) is wholly inadequate. BBB submitted zero billing records for its attorneys and experts. ██████████████ BBB did not submit any detailed time entries, including the date the work was performed, by whom, a detailed record of the work performed and the hours expended as well as charts detailing or summarizing costs and fees by month throughout the course of the litigation,[12] much less evidence as to whether the total hours expended were reasonable (factor 2) and BBB did not specify its attorneys' rates (factor 3); while the average rate for each attorney can be calculated from the chart provided, since there is no description of what work each attorney performed, there is no way for the Court to determine if the rate was reasonable for that work. Instead, BBB submitted excerpts from a 2011 economic survey that has no bearing on this case ██████████████, a 2014 Docket Navigator Report that also has no bearing on this case ██████████████ and biographies for each of the attorneys who represented BBB ██████████████. BBB provided no evidence on what, if any, reductions were made (factor 4), suggesting that BBB is attempting, for example, to tax IH for the attorney-time expended in executing its dilatory tactics regarding the source code computer described above. BBB's complete failure to present evidence on factors 1-4 prevents any meaningful evaluation of whether the fees sought are "reasonable" under factor 5. Furthermore, BBB's fee request itself is based on the unreasonable notion that IH should have immediately dropped its case when the Supreme Court issued *Alice*, despite the fact that BBB

---

[12] The same is true regarding BBB's experts – there is no way to determine the actual work performed.

itself waited nearly a year after *Alice* to file its Rule 12(c) motion.

Absent admissible evidence or evidence that is likely to be admissible, there is no factual basis upon which to award fees.  BBB relies on a chart ███████████████ which is vague and objectionable hearsay.  There is no possible way to determine the actual work performed and number of hours spent performing that work, or to determine if the time entries in any way relate to the alleged basis for awarding fees.  That BBB not submit admissible evidence supporting actual fees to be awarded supports a denial of its Motion, or at best a stay to permit a second round of briefing to determine what the award should actually be, should the Court award any fees.

## VI.    CONCLUSION

For the foregoing reasons, IH respectfully requests that Defendant's Motion be denied in its entirety, or any fee award be limited to any conduct the Court found to be exceptional.  In the alternative, if the Court is not inclined to deny Defendant's Motion in its entirety, it should defer any decision on the Motion until the conclusion of IH's appeal.

Dated:  September 21, 2015                STAMOULIS & WEINBLATT LLC

                                         */s/ Richard C. Weinblatt*
                                         Stamatios Stamoulis #4606
                                         Richard C. Weinblatt #5080
                                         Two Fox Point Centre
                                         6 Denny Road, Suite 307
                                         Wilmington, DE 19809
                                         Telephone:  (302) 999-1540
                                         stamoulis@swdelaw.com
                                         weinblatt@swdelaw.com

                                         *Attorneys for Plaintiff*
                                         *Inventor Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2015, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.


*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080