IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INVENTOR HOLDINGS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND INC.,<br><br>    Defendant. | CASE NO. 1:14-cv-448-GMS<br><br>**(Public Version)** |

**<u>DEFENDANT BED BATH & BEYOND INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR ATTORNEYS' AND EXPERTS' FEES</u>**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Tel: (302) 652-5070
janderson@fr.com

Neil J. McNabnay
David B. Conrad
Ricardo J. Bonilla
1717 Main Street, Suite 5000
Dallas, TX 75201
214-747-5070 (Telephone)
mcnabnay@fr.com
conrad@fr.com
rbonilla@fr.com

**ATTORNEYS FOR DEFENDANT
BED BATH & BEYOND INC.**

Dated: October 1, 2015

## TABLE OF CONTENTS

**Page**

I. ARGUMENT ...................................................................................................................2

    A. Inventor Holdings' infringement case was meritless, and its arguments regarding source code and doctrine of equivalents are irrelevant and inapplicable. ...............................................................2

    B. The '582 Patent was invalid after *Alice* issued, and Inventor Holdings knew it. ............................................................................5

    C. BBB's requested fees are not unreasonable. ...........................................6

II. CONCLUSION ...............................................................................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
   134 S. Ct. 2347, 2355 (2014) ............................................................................................... Passim

*AquaTex Indus., Inc. v. Techniche Solutions*,
   479 F.3d 1320, 1329 (Fed. Cir. 2007) ............................................................................................ 4

*Deere & Co. v. Bush Hog, LLC*,
   703 F. 3d 1349 (Fed. Cir. 2012) ..................................................................................................... 3

*ICON Internet Competence v. Travelocity.com LP*,
   No. 3:11-cv-01131, 2013 WL 655024 (N.D. Tex. Feb. 22, 2013) ............................................... 4

*Intellicall, Inc. v. Phonometrics, Inc.*,
   952 F.2d 1384 (Fed. Cir. 1992) ..................................................................................................... 4

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ....................................................................................................... 5

*Sanitec Inds., Inc. v. Micro-Waste Corp.*,
   No. H-04-3066, 2009 WL 1457157 (S.D. Tex. May 22, 2009) .................................................. 6

*Southern Leasing Partners, Ltd. v. McMullan*,
   801 F.2d 783 (5th Cir. 1986) ......................................................................................................... 5

*Taurus IP v. DaimlerChrylser*,
   726 F.3d. 1306 (Fed. Cir. 2013) .................................................................................................... 5

*Texas Instruments Inc. v. Cypress Semiconductor, Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ....................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 54(d)(2)(C) ................................................................................................................. 6

Inventor Holdings' infringement position regarding "remote seller" was objectively unreasonable, since "local seller" and "remote seller" unquestionably refer to different merchants in the claims. No reasonable person could have looked at BBB's accused website and concluded that BBB processed payments in-store for third-party catalog merchants. There is no plausible reading, literally or by equivalence, that would allow the two "sellers" in the claim to be the same entity. Inventor Holdings' response on that issue is entirely irrelevant, inapplicable, or incorrect.

Furthermore, Inventor Holdings fails to refute BBB's arguments supporting an award of BBB's attorneys' and experts' fees. Other than touting the presumption of validity of patents, Inventor Holdings put forth no argument for why it had a reasonable basis for believing the '582 Patent would survive a § 101 challenge. Presumptions can be overcome, and in this case, they were overcome. In light of *Alice*, no reasonable person could have concluded that the '582 patent claimed an eligible invention rather than an ineligible abstract idea. Inventor Holdings had a duty to evaluate the eligibility of the '582 Patent throughout its case, especially after the issuance of *Alice*, and should have withdrawn its claims because they were no longer plausible. But it did not do so. While Inventor Holdings tries to shift blame for its failure on BBB, it is not BBB's burden to file a motion—it is the plaintiff's burden to concede its case when its claims can no longer be supported.

Therefore, BBB respectfully requests that the Court grant BBB's motion and award its attorneys' fees and expert costs. Should the Court agree with BBB that Inventor Holding's infringement case was objectively unreasonable, fees should be awarded from the filing of the lawsuit. Should the Court only agree that Inventor Holdings failed to reevaluate whether its case was objectively reasonable in view of *Alice*, fees should be awarded from the time that the Supreme Court's decision issued on June 19, 2014.

I. **ARGUMENT**

    A. **Inventor Holdings' infringement case was meritless, and its arguments regarding source code and doctrine of equivalents are irrelevant and inapplicable.**

Inventor Holdings' source code arguments are irrelevant, serving as red herrings to the issue of whether its infringement allegations were ever objectively reasonable. In its Opposition, Inventor Holdings never disputes that BBB's system does not include any third-party entities. It never explains why source code would have any relevance to whether BBB's processes remote orders for a third party. Rather, Inventor Holdings argues that (1) BBB impeded Inventor Holdings' access to the source code; and (2) Inventor Holdings put forth valid infringement contentions based on the doctrine of equivalents. These arguments fail for several reasons.

First, Inventor Holdings did not need access to the source code to determine that BBB's system did not process remote orders from third-party merchants. A cursory review of the website would reveal that BBB does not process third-party payments, since it only allows for purchases of BBB products in-stock at its local store. *See* Expert Report of Stephen Gray on Non-Infringement at 18-19 (attached as Ex. C). ***Inventor Holdings does not dispute the fact that BBB's system only allows for purchases of products in-stock at its local store.*** The documentation provided early in the case by BBB was also sufficient to establish this fact. (*See* D.I. 89, Ex. C at 3). Inventor Holdings' allegations that BBB employed "dilatory tactics" and delayed review of the source code are false and irrelevant. As Inventor Holdings readily admits, its experts had access to BBB's source code on three separate occasions, and none of those reviews resulted in any evidence of a third party (because there is none). Inventor Holdings does not explain at all how BBB's source code would change what was apparent from its public website and its documents: BBB's system does not involve a third-party merchant.

Second, Inventor Holdings' doctrine of equivalents arguments were objectively unreasonable. A patentee cannot simply read out a limitation of the patent, as Inventor Holdings argues, and call it "equivalent." *Deere & Co. v. Bush Hog, LLC*, 703 F. 3d 1349, 1356 (Fed. Cir. 2012) ("[C]ourts properly refuse to apply the doctrine of equivalents where the accused device contains the antithesis of the claimed structure. In such a case, application of the doctrine of equivalents would 'vitiate' a claim element.") (citations omitted). The asserted claims expressly referred to two distinct entities, a "local seller" and a "remote seller." These two distinct entities are the entire point of the supposed invention—to process payments at a local merchant, with limited inventory, for goods purchase from a remote merchant, with a wider selection of catalog merchandise. *See* '582 Patent at 13:34-39 ("There has thus been described a new and improved system and method which enables customers to pay for **remote purchases from third parties** at local establishments.") (emphasis added); *see also id.* at 9:19-23. Inventor Holdings wanted to say that BBB alone, selling its in-store, in-stock items, is "equivalent" to a two-party system. The doctrine of equivalents clearly does not permit this.

Furthermore, the doctrine of equivalents argument was untimely and conclusory. Inventor Holdings made no mention of the doctrine of equivalents with respect to any of the asserted claim elements in either its preliminary infringement contentions served September 17, 2014 (*see* D.I. 89, Ex. A) or its supplemental contentions served October 1, 2014 (*see* D.I. 92, Ex. B-2) Instead, Inventor Holdings included this single paragraph:

> Based on presently known information, Plaintiff contends that the Accused Products literally infringe the asserted claims. Nevertheless, with respect to any claim feature that may be found not to be literally embodied in the Accused Products, Plaintiff contends in the alternative that the Accused Products embody such claim features under the doctrine of equivalents and that any claim feature not found to be literally met is equivalently met because any difference between the claim feature and the Accused Products is not a substantial difference. Accordingly, Plaintiff contends that any asserted claim which the Accused Products are not found

3

>  to be embodied literally is nevertheless embodied by the Accused Products under the doctrine of equivalents under an operative doctrine of equivalents test, e.g., function-way-result or insubstantial differences tests.

*Id.* at 2. This generic, conclusory, and boilerplate language does not suffice to support contentions under the doctrine of equivalents. *See, e.g.*, *ICON Internet Competence v. Travelocity.com LP*, No. 3:11-cv-01131, 2013 WL 655024 at *10-11 (N.D. Tex. Feb. 22, 2013) (citing *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)) ("This boilerplate language does not satisfy [Plaintiff]'s burden of presenting particularized expert testimony of a person of ordinary skill in the art that describes the claim limitations and establishes that those skilled in the art would recognize the equivalents.").

Inventor Holdings' expert argument on doctrine of equivalents was similarly conclusory, consisting of nothing more than the bare assertion that the accused websites "are a remote seller that performs substantially the same function in substantially the same way to obtain substantially the same result as the remote seller." July 17, 2015 Expert Report of Dr. Christopher Westland, at 42 (attached as Ex. A). To demonstrate infringement under the doctrine of equivalents, "a patentee must . . . provide ***particularized*** testimony and linking argument as to the 'insubstantiality of the differences'" between the asserted patent and the accused product. *Texas Instruments Inc. v. Cypress Semiconductor, Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (emphasis added). Inventor Holdings and its expert provided none of that here. Dr. Westland did not provide any particularized reasons in his report—just his conclusions. He simply states, without support, that what he identifies as meeting the claim limitations are substantial equivalents. He recites how BBB's system operates, and then asserts it is an insubstantial difference from the patent, without offering a reason or basis as to why. This cannot serve as a reasonable basis for Inventor Holdings to pursue its claims. *See Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1389 (Fed. Cir. 1992) ("[P]roof [of equivalency] was an essential part of

4

[plaintiff's] case"). The Federal Circuit has approved of fee awards where the plaintiff relies on conclusory expert testimony. *See, e.g., MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (upholding finding of exceptional case where plaintiff "introduced and relied on expert testimony that failed to meet even minimal standards of reliability").

### B. The '582 Patent was invalid after *Alice* issued, and Inventor Holdings knew it.

It is not BBB's duty to get rid of a meritless case. Rather, it is the plaintiff's duty to concede when its case can no longer supported. Inventor Holdings was duty-bound to continually evaluate its case and objectively determine its merit. *Taurus IP v. DaimlerChrylser*, 726 F.3d. 1306 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims."); *Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (counsel neglected its continuing obligation to review, reexamine and reevaluate its position as the facts came to light after the filing of the complaint). Inventor Holdings failed to do so. It should have realized that its patent would not survive a § 101 challenge after the Supreme Court issued its decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2355 (2014), and after Inventor Holdings saw BBB's arguments in its motion.

Inventor Holding's strategy was evidently to hold out for as long as it could in hopes of a settlement, despite the clear ineligibility of its patent once *Alice* issued in June, 2014. It argued in its briefing that the § 101 issue should be delayed for vague and unspecified reasons. *See* D.I.No. 42 at 13-14 and n.6 ("The Court is not required to accept Defendants' factual allegations as true on a Rule 12(c) motion. At most, Defendants have raised disputed material fact issues . . . . [G]ranting a motion to dismiss under § 101 at this stage of the proceeding based only on Defendants' *ipse dixit* assertions is unwarranted."). Plaintiff had everything it needed to reevaluate its case in view of *Alice* because ineligibility under § 101 was apparent from the face of the '582

Patent itself, a fact this Court acknowledged. *See* Transcript of Markman Hearing at 50:18-23 ( "MR. CONRAD: Nowhere in the plaintiff's responsive briefs to the Section 101 issues do they identify any particular fact issues that are relevant to resolve the discussion. . . . THE COURT: That is my recollection.").

Inventor Holdings cannot rely on the presumption of validity because it cannot show that a reasonable mind could disagree on whether that presumption could be overcome. Inventor Holdings' claims asserting its business method patent was objectively *un*reasonable when *Alice* issued. It was an issue it was keenly aware of as a likely problem for its patents like the '582 Patent. (D.I. 89 at 3.) Inventor Holdings did not acknowledge that its claims were no longer viable after *Alice*, resulting in BBB having to incur significant fees to continue to defend a meritless suit over a clearly invalid patent.

### C. BBB's requested fees are not unreasonable.

BBB's attorneys' and experts' fees are not excessive and are supported by the evidence. BBB provided the declaration of its attorney, David Conrad, in support of the reasonableness and amount of its fees, which is sufficient to support an attorneys' fee award. *See, e.g., Sanitec Inds., Inc. v. Micro-Waste Corp.*, No. H-04-3066, 2009 WL 1457157, at *1 n.2 (S.D. Tex. May 22, 2009).

Inventor Holdings has provided no basis for its complaint about the fee amount other than that BBB did not provide detailed records supporting its fees. Therefore, BBB submits with its reply redacted copies of its invoices in support of its claim for attorneys' fees. *See* Ex. B. The Court may also defer calculating fees until after ruling on whether fees should be awarded. Fed. R. Civ. P. 54(d)(2)(C).

Should the Court agree with BBB that Inventor Holding's infringement case was objectively unreasonable, fees should be awarded from the filing of the lawsuit. Should the Court only agree that Inventor Holdings failed to reevaluate whether its case was objectively reasonable

in view of *Alice*, fees should be awarded from the time that the *Alice* decision issued in June 19, 2014.

## II. CONCLUSION

For the foregoing reasons, BBB respectfully requests that this Court grant its Motion and require Inventor Holdings to reimburse BBB for its reasonable attorneys' fees of $760,774.30. Conrad Decl., Ex. B. Pursuant to the Court's inherent power, BBB also requests expert fees of $171,078.64. *Id.*

| | |
|---|---|
| Dated: October 1, 2015 | */s/ Jeremy D. Anderson* |
| | Jeremy D. Anderson (#4515) |
| | **FISH & RICHARDSON P.C.** |
| | 222 Delaware Ave., 17th Floor |
| | P.O. Box 1114 |
| | Wilmington, DE 19801 |
| | (302) 652-5070 |
| | janderson@fr.com |
| | |
| | Neil J. McNabnay |
| | David B. Conrad |
| | Ricardo J. Bonilla |
| | 1717 Main Street, Suite 5000 |
| | Dallas, TX 75201 |
| | 214-747-5070 (Telephone) |
| | 214-747-2091 (Telecopy) |
| | mcnabnay@fr.com |
| | conrad@fr.com |
| | rbonilla@fr.com |
| | |
| | **ATTORNEYS FOR DEFENDANT** |
| | **BED BATH AND BEYOND INC.** |